UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TIMOTHY BLACK,

          Petitioner,

vs.                                         Case No. 3:08-cv-928-J-12TEM

SECRETARY, DOC, et al.,

          Respondents.

_____

## ORDER

## I. Status

Petitioner is proceeding on a Petition for Writ of Habeas Corpus under to 28 U.S.C. § 2254 (Doc. #1) (hereinafter Petition), filed on September 22, 2008, pursuant to the mailbox rule. The Petition challenges a 2002 state court (Duval County) conviction for two counts of sexual battery and one count of lewd or lascivious molestation. Twenty grounds are presented in the Petition. The first ground is the trial court was without subject matter jurisdiction to try the case and impose judgment of conviction and sentence. There are thirteen grounds of ineffective assistance of trial counsel and two grounds of ineffective assistance of appellate counsel. Petitioner also claims his conviction was due to witness tampering and a Brady[1] violation; a biased trial judge conducting the proceedings; prosecutorial vindictiveness; and a speedy trial violation.

_____

[1] Brady v. Maryland, 373 U.S. 83 (1963).

Respondents filed a Response to Habeas Petition (Doc. #42) (hereinafter Response), Exhibits (Doc. #55), and Expanded Exhibits (Doc. #59).[2]  Petitioner filed a reply (Doc. #90) (hereinafter Reply).  See Order (Doc. #8).  The Court will also consider Petitioner's Partial Exhibits (Doc. #93), the Supplemental Exhibits filed under seal (S-1), and Exhibit (S-3).  See Orders (Docs. #100 & S-4).

## II.  Evidentiary Hearing

The pertinent facts of the case are fully developed in the record before the Court.  Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999).  No evidentiary proceedings are required in this Court.  See High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001).  The Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

## III.  Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d).  This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision."

---

[2] The Court will hereinafter refer to the Exhibits as "Ex."

<u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2003).

As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed *de novo*, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

<u>Jennings v. McDonough</u>, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual

findings] by clear and convincing evidence."[3]
28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir.), cert. denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts,[4] they must be evaluated under § 2254(d).

## IV.  Timeliness

Respondents calculate that the petition is timely filed, Response at 4-5, and the Court will accept this calculation.

-------------------

[3] This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

[4] The Court's evaluation is limited to examining whether the highest state court's resolution of the claim is contrary to, or an unreasonable application of, clearly established law, as set forth by the United States Supreme Court. See Newland v. Hall, 527 F.3d 1162, 1199 (11th Cir. 2008), cert. denied, 129 S.Ct. 1336 (2009).

# V.  Procedural Default

There are prerequisites to a federal habeas review:

> Before bringing a § 2254 habeas action in
> federal court, a petitioner must exhaust all
> state court remedies that are available for
> challenging his state conviction. See 28
> U.S.C. § 2254(b), (c).  To exhaust state
> remedies, the petitioner must "fairly
> present[]" every issue raised in his federal
> petition to the state's highest court, either
> on direct appeal or on collateral review.
> Castille v. Peoples, 489 U.S. 346, 351, 109
> S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989)
> (emphasis omitted).  Thus, to properly exhaust
> a claim, "state prisoners must give the state
> courts one full opportunity to resolve any
> constitutional issues by invoking one complete
> round of the State's established appellate
> review process." O'Sullivan v. Boerckel, 526
> U.S. 838, 845, 119 S.Ct. 1728, 1732, 144
> L.Ed.2d 1 (1999).

Maples v. Allen, 586 F.3d 879, 886 (11th Cir. 2009) (per curiam),

cert. granted in part, Maples v. Thomas, 131 S.Ct. 1718 (2011).

Procedural defaults may be excused under certain
circumstances: "[n]otwithstanding that a claim has been
procedurally defaulted, a federal court may still consider the
claim if a state habeas petitioner can show either (1) cause for
and actual prejudice from the default; or (2) a fundamental
miscarriage of justice." Id. at 890 (citations omitted). In order
for Petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that
> prevented [him] from raising the claim and
> which cannot be fairly attributable to his own
> conduct." McCoy v. Newsome, 953 F.2d 1252,
> 1258 (11th Cir. 1992) (quoting Carrier, 477

> U.S. at 488, 106 S.Ct. 2639). Under the
> prejudice prong, [a petitioner] must show that
> "the errors at trial actually and
> substantially disadvantaged his defense so
> that he was denied fundamental fairness." <u>Id</u>.
> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106
> S.Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir.), <u>cert</u>. <u>denied</u>, 528 U.S. 934 (1999).

"[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." <u>Fortenberry v. Haley</u>, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citation omitted), <u>cert</u>. <u>denied</u>, 538 U.S. 947 (2003). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002).

## VI. Ineffective Assistance of Counsel

Petitioner raises claims of ineffective assistance of trial and appellate counsel. "The same standard applies whether [a court is] examining the performance of counsel at the trial or appellate level." <u>Eagle v. Linahan</u>, 279 F.3d 926, 938 (11th Cir. 2001) (citing <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11th Cir. 1987)).

Recently, the Eleventh Circuit set forth the two-pronged test for establishing ineffective assistance of counsel:

To succeed on these Sixth Amendment claims, [Petitioner] must show both deficient performance and prejudice: he must establish first that "counsel's representation fell below an objective standard of reasonableness," *and* then that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); accord Wiggins v. Smith, 539 U.S. 510, 521–22, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); Darden v. Wainwright, 477 U.S. 168, 184, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). "The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct." Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998). However, "the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact." Id.

Under AEDPA, we accord deference to a state court's determinations on both Strickland prongs—performance and prejudice—so long as the state court reached the merits of the petitioner's claim, and reached both prongs of the Strickland analysis. Moreover, we are instructed to afford state court habeas decisions a strong presumption of deference, even when the state court adjudicates a petitioner's claim summarily—without an accompanying statement of reasons. Harrington v. Richter, --- U.S. ----, 131 S.Ct. 770, 780, 784, 178 L.Ed.2d 624 (2011); Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002); see also Renico v. Lett, ---U.S. ----, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings ... and demands that state-court decisions be given the benefit of the doubt." (citations and internal quotation marks omitted)).

Ferrell v. Hall, 640 F.3d 1199, 1223-24 (11th Cir. 2011). See Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision."), cert. denied, 544 U.S. 982 (2005).

In establishing a claim of ineffective assistance of appellate counsel, there must be a showing that appellate counsel's performance was so deficient that it fell below an objective standard of reasonableness, but also, there must be a demonstration "that but for the deficient performance, the outcome of the appeal would have been different." Ferrell, 640 F.3d at 1236 (quoting Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004)).

## VII.  Ground One

In ground one, Petitioner asserts that the trial court was without subject matter jurisdiction to try the case and impose judgment of conviction and sentence. Petition at 37. The court concluded there was no basis in either the law or fact to support this ground. Ex. P at 97. The decision was affirmed per curiam on April 25, 2006. Ex. S. The mandate issued on August 3, 2006. Ex. U. Thus, there are qualifying state court decisions, and the rejection of this claim is entitled to deference under AEDPA.

Upon a thorough review of the record and the applicable law, the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See Response at 15-17. Accordingly, Petitioner is not entitled to relief on the basis of ground one.

In the alternative, this claim has no merit. Petitioner was tried on an amended information. Ex. B at 56-57. Even if the information had been dismissed, the state would have simply cured the deficiency by filing a new information. Of note, Petitioner was tried on an amended information, and he has not, and cannot, allege that the amended information fails to state a crime. The charging document sets forth the elements of the offense. Id. The assistant state attorney provided the appropriate certification in the information and amended information. Ex. A at 7-8; Ex. B at 56-57.

The trial court was not deprived of jurisdiction:

> Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). More specifically, federal habeas relief may only be granted on a state charging document where that indictment was so defective as to deprive the trial court of jurisdiction. DeBenedictis v. Wainwright, 674 F.2d 841, 842-43 (11 Cir. 1982), citing, Branch v.

<u>Estelle</u>, 631 F.2d 1229, 1233 (5 Cir. 1980). A charging document that sets forth the elements of the offense in language clear enough to enable the defendant to plead a bar in jeopardy does not raise a jurisdictional defect. <u>Alexander v. McCotter</u>, 775 F.2d 595, 599 (5 Cir. 1985). Such was the case here. Further, the identical claim presented in this federal proceeding was raised in the Florida courts and rejected, with the state court finding the subject information not defective under Florida law. This Court, therefore, need not address the issue in a habeas corpus proceeding. <u>See</u> <u>McKay v. Collins</u>, 12 F.3d 66, 68 (5 Cir.), <u>cert.</u> <u>denied</u>, 513 U.S. 854, 115 (1994); <u>Branch v. Estelle</u>, 631 F.2d at 1233. <u>See also</u> <u>Alexander</u>, 775 F.2d at 599 (holding that state court's refusal to grant habeas relief is tantamount to finding that indictment does not contain a jurisdictional defect).

Even if reviewable, [Petitioner] would not be entitled to relief on this claim, because it is meritless. In Florida, there is no requirement that sworn affidavits be attached to the arrest report. Nor is there a requirement that sworn affidavits be attached to the information. <u>See</u> <u>State v. Bacon</u>, 385 So.2d 1160, 1163 (Fla. 2 DCA 1980). The information here contains the required sworn oath of the Assistant State Attorney certifying that "that testimony has been received under oath from the material witness or witnesses for the offense(s), and the allegations as set forth in the foregoing Information would constitute the offense(s) charged, and that the prosecution is instituted in good faith." <u>See</u> Information. (Exhibit A attached to Rule 3.850 motion, as supplemented) (DE# 10; Ex. 13). This sworn oath of the prosecutor that he received testimony under oath from the material witness or witnesses for the offense is clearly sufficient pursuant to applicable Florida law. See Fla. R.Crim.P. 3.140(g).

Bromell v. McNeil, No. 07-61917-CIV, 2008 WL 4540054, at *17 (S.D. Fla. Oct. 10, 2008) (not reported in F.Supp.2d). Petitioner is not entitled to relief on ground one.

## VIII.  Ground Two

In his second ground, Petitioner complains that his trial counsel was ineffective in litigating the motion to suppress. Petition at 45.  This claim was presented in ground five of the Rule 3.850 motion, and in denying the claim that counsel was ineffective for failure to adequately investigate, file an adequate motion to suppress, and call witnesses, the trial court said:

> In this ground the defendant claims that the motion to suppress filed by defense counsel was inadequate but the defendant fails to specify the inadequacy.  The defendant again accuses everyone of having been involved in a conspiracy to see that he was convicted. The defendant apparently is of the opinion that the State Attorney's Office needed a warrant to obtain the letters written by the defendant instead of an investigative subpoena.  As noted in the defendant's previous ground, defense counsel did file a motion to suppress and this Court conducted an evidentiary hearing on that motion.  The matter was preserved for appellate review. The defendant's current ground is really nothing more than another broadside attack without basis or showing of how defense counsel could or should have done anything different and, further, that it would have affected the outcome of the defendant's trial.

Ex. P at 102.  This decision was affirmed on appeal.  Ex. S.

Additionally, the trial court denied ground three of the amended Rule 3.850 motion, in which Petitioner claimed that defense counsel's failure to call the child victim constituted deficient

performance of counsel.  The trial court denied this contention

stating:  "This Court can think of no reason why defense counsel

would have knowingly called the child victim to testify at either

of these hearings."  Ex. P at 101.  The denial of the motion was

affirmed on appeal.  Ex. S.

Recently, the Eleventh Circuit, in reviewing claims of

ineffective assistance of counsel within the Strickland analysis

under AEDPA, explained:

> To establish a claim of ineffective
> assistance, first, "the defendant must show
> that counsel's performance was deficient ...
> [which] requires showing that counsel made
> errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the
> defendant by the Sixth Amendment." Strickland
> v. Washington, 466 U.S. 668, 104 S.Ct. 2052,
> 2064, 80 L.Ed.2d 674 (1984). Second, the
> defendant must show that counsel's deficient
> performance prejudiced him. Id. That is,
> "[t]he defendant must show that there is a
> reasonable probability that, but for counsel's
> unprofessional errors, the result of the
> proceeding would have been different." Id. at
> 2068.

> Within the Strickland analysis, a
> lawyer's decisions are shielded from later
> second-guessing:

> > [S]trategic choices [by a
> > defendant's lawyer] made after
> > thorough investigation of law and
> > facts relevant to plausible options
> > are virtually unchallengeable....
> > [C]ounsel has a duty to make
> > reasonable investigations or to make
> > a reasonable decision that makes
> > particular investigations
> > unnecessary.... [We] apply[ ] a
> > heavy measure of deference to
> > counsel's judgments.

<u>Id</u>. at 2066.

> In reviewing <u>Strickland</u> claims under
> AEDPA, **"The pivotal question is whether the
> state court's application of the <u>Strickland</u>
> standard was unreasonable**. This [inquiry] is
> different from asking whether defense
> counsel's performance fell below <u>Strickland</u>'s
> standard." <u>Harrington v. Richter</u>, ---U.S.
> ----, 131 S.Ct. 770, 785, 178 L.Ed.2d 624
> (2011).

<u>Jones v. Sec'y, Dep't of Corr.</u>, 644 F.3d 1206, 1209 (11th Cir.
2011) (per curiam) (emphasis added).

Upon review, there was a hearing on the motion to suppress,
and the Petitioner and his wife, Alice Black, were called as
witnesses by the defense.   Ex. B at 352-437.   Respondents
acknowledge that defense counsel could have called the victim as a
witness, however, this would have been done at great risk to the
defense, because Petitioner had been threatening the victim, which
could have lead to charges of witness tampering.  Response at 18.

Petitioner, in his Reply at 15, suggests that the victim
should have been called to say that Investigator John G. McCallum
said he had a warrant.   Instead, defense counsel called Alice
Black, and she attested that Investigator McCallum said he had a
warrant. Ex. B at 397.  Thus, even assuming the victim would have
testified that the Investigator said he had a warrant, such
testimony would constitute, at best, cumulative testimony.

At the hearing, the state called Detective Jones and
Investigator McCallum.   The trial court denied the motion to
suppress finding:

- 13 -

On the first issue from the evidence before me I find the statements were freely and voluntarily [sic] and the motion for suppression on that ground is denied.

As to the second issue I find Mr. Black has no standing to bring this matter. While it was his residence, these were not his letters. They were letters written to his wife and she can do what she well wants to with them. Furthermore, I am mindful that they do in fact include various threats to both the child and to the wife sufficient that I am sure that Detective McCallum's observation that she was ambivalent was quite accurate. She had certainly been rather ambivalent here. The very thrust to all of this to which at least the child testified to at the previous hearing that was in fact Mr. Black had threatened both of them with being returned to Jamaica and now she says it never happened. So I am sure that some of this is as a result of the letters.

Furthermore, even if Mr. Black does have standing, the State Attorney's Office has constitutional power to issue subpoenas without court approval. And I find the method in which it was done by Detective McCallum was correct. I find Mr. McCallum's testimony as to the service of the subpoena credible. I find Mrs. Black's testimony incredible. And accordingly the motion on that ground is also denied.

Ex. B at 436-37.

Counsel's performance was not deficient. The trial court credited Investigator McCallum's testimony over that of Petitioner's wife. Even if the victim had testified at the suppression hearing, the trial judge was convinced that Petitioner had threatened both his wife and the child victim, and due to Petitioner's attempted manipulation of the victim's testimony, if

- 14 -

she had testified, it would not have been well received or perceived as credible, just as the wife's testimony was not credited over that of Investigator McCallum.

Ultimately, Petitioner was not prejudiced by counsel's performance because the victim's trial testimony was sufficient to support the conviction. In addition, the victim attested that her recantation was done at the direction of her mother. Ex. C at 74.

There are qualifying state court decisions and AEDPA deference is warranted. Simply, deference should be applied to the decisions of the state courts. The adjudications of the state courts resulted in decisions that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground two because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts. See Response at 18-19.

## IX. Ground Three

In his third ground, Petitioner asserts that his conviction was a result of witness tampering and a Brady violation. Petition at 51. This claim was presented in the tenth ground of a Rule 3.850 motion. The following factual summary, in pertinent part, was given by the trial court in its Order Denying Amended Motion for Post-Conviction Relief:

- 15 -

While in custody, the defendant wrote some 80 letters to his wife containing assorted threats to divorce her and thereby force her and the child to return her [sic] to Jamaica.[5]  One of the letters included a "drop affidavit" prepared by the defendant in his own handwriting for his wife's signature. Also included in the letters were various statements placing the blame on the child for being sexually active and for initiating the sexual contact with the defendant.

When the wife and daughter appeared at the State Attorney's Office attempting to drop charges using the affidavit created by the defendant, the Assistant State Attorney deduced that the defendant might have been having inappropriate contact with his wife and step-daughter and might have been threatening the wife.  Along with the defendant's drop affidavit which she had signed, the wife presented a letter from the victim recanting the statements which she had made implicating her step-father.  On the day the defendant's wife attempted to drop the charges, an investigator from the State Attorney's Office accompanied the wife to her residence and served an investigative subpoena on her.  The subpoena was for the production of any correspondence written to her by the defendant from the County Jail.  Some 23 of those letters were introduced at trial.  Of those, some 4 or 5 were subjected to handwriting comparisons.

The child later withdrew her recantation. As a result of the defendant's contact with the child and her mother, the Division of Family Services removed the child from the mother's care and placed her in a foster residence.  The child was living with the foster family at the time she testified at the trial.

_____

[5] The mother and child, who were from Jamaica, were legally in the United States because the mother was married to Petitioner, an American citizen.  Ex. P at 94.

Ex. P at 94-95.

The court continued:

> The matter was tried before the Court,
> the undersigned, on February 26, 2002. At
> trial, the Court had benefit of the testimony
> of the child, the initial reporting officer,
> the investigating detective, the investigator
> from the State Attorney's Office, the
> handwriting examiner, the videotape of the
> child's interview with the child protection
> team counselor, and the defendant's wife.
> After having been cautioned, the defendant
> elected also to testify.
>
> During the course of his testimony, the
> defendant acknowledged that he had written the
> letters which were introduced in evidence and
> acknowledged that there had been assorted
> confrontations in which he had threatened
> either directly or indirectly to send the
> child and her mother back to Jamaica. Most
> importantly, the defendant's testimony took
> various forms of relating that none of what
> had happened was his fault and that it had all
> been the sexually active 10-11 year old who
> had done such things as played with his penis
> while sitting in his lap and (he believed) had
> masturbated him while he was asleep. At the
> conclusion of all of the evidence, judgment of
> acquittal was entered as to one count. The
> defendant was convicted on all other counts.

Id. at 95-96.

The trial court held:

> In this particular ground, the defendant
> again complains that the letters taken from
> his wife were not done pursuant to proper
> process and that somehow the State altered the
> process in violation of Brady. There is
> nothing in this particular ground which shows
> in any manner a factual contention that the
> State did anything to hide information
> indicating the defendant's innocence.
> Instead, this ground is another attack by the
> defendant on the process of obtaining evidence

- 17 -

> which was, as previously noted, the very
> ground considered by this Court during the
> course of the suppression hearing.
> Accordingly, the defendant has failed to
> provide any factual or legal support for this
> claim.

Id. at 104. This decision was affirmed. Ex. S.

At the suppression hearing, Investigator McCallum attested that he served a subpoena on Mrs. Black on August 8, 2001, and that he scratched out a prior defendant's name, Travis A. Welch, and wrote in Timothy Black, on the subpoena. Ex. B at 416. See id. at 257-58 (Witness Subpoena).[6] This was done when he removed it from his portfolio and handed it to Mrs. Black. Id. at 417. Investigator McCallum explained the document was in the same condition as it was when he handed it to Mrs. Black, except there were two holes punched in the top of the subpoena and there was a stray green ink mark on the document. Id.

Investigator McCallum said he followed Mrs. Black home, followed her to her door, and told her he had a *subpoena duces tecum* related to the letters she had mentioned receiving from Petitioner, which were discussed during her interview at the courthouse.[7] Id. at 418. He handed the subpoena to Mrs. Black,

---

[6] Apparently, Petitioner wrote comments on the bottom of these documents prior to submitting the documents to the trial court.

[7] The subpoena was for Alice Black, Ex. B at 428, and was for "all letters defendant, Timothy Black, wrote to Alice Black or Areka Black from February 26, 2001 to present." Id. at 257. Although the subpoena had the wrong case number and docket number for the Black case, id. at 427, it did correctly reference the date received and served: August 8, 2001. Id. 433.

and she returned with a box containing the letters.  <u>Id</u>. at 419.
Investigator McCallum picked up the letters that Mrs. Black sorted
out, and placed them in a plastic bag that the child victim
retrieved from the kitchen.  <u>Id</u>. at 420.  He noticed, after he had
driven away and was thumbing through the letters, that the subpoena
was in the bag, on the bottom of all of the letters.  <u>Id</u>. at 421.

The trial court found that Investigator McCallum's testimony
was credible, the method of serving the subpoena was correct, and
the State Attorney's Office had constitutional power to issue the
subpoena without court approval.  <u>Id</u>. at 437.  The court found Mrs.
Black's testimony incredible, and denied the motion to suppress.
<u>Id</u>.

Petitioner adequately exhausted his claim.  Ex. P at 33-35.
At best, however, there has been a showing that there was a
scrivener's error in the investigative subpoena.  Apparently, a
*subpoena duces tecum* template in another case was used to prepare
the *subpoena duces tecum* for the Black case.  In doing so, the
State Attorney's Office failed to change the case and docket
numbers and to change the defendant's name.  When the Investigator
discovered that the defendant's name had not been changed, he
crossed out the incorrect name and wrote in "Timothy Black."  The
subpoena, however, was addressed appropriately to Alice Black, and
concerned the letters at issue written by Timothy Black.

Deference under AEDPA will be given to these decisions; the
state courts' decisions were not contrary to clearly established

federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  See Response at 21-26.

## X.  Ground Four

In his fourth ground, Plaintiff alleges there was a conflict of interest, ineffective assistance of counsel, and prosecutorial misconduct which resulted in the bench trial being a "useless charade."  Petition at 58.  A part of this claim was raised in ground fifteen of the amended Rule 3.850 motion and rejected by the trial court, noting that based on the First District Court of Appeal affirmance of Petitioner's conviction, further comment on this ground was unnecessary.  Ex. P at 106.  The trial court also rejected Petitioner's other claims of conflict, ineffectiveness of counsel and prosecutorial misconduct.  Id. at 92-109.

This Court has extensively reviewed the trial record, and the bench trial was certainly not a charade.  Indeed, there was a complete and thorough bench trial, with the child victim testifying as to the offenses.  Ex. C.  Additionally, Patrol Officer Dennis E. Pellot, Detective Carla D. Roberts Jones, Investigator McCallum, and handwriting expert Don Quinn testified for the state.  The taped interview of the victim was introduced into evidence.  Id. at 105.  Initially, Petitioner elected not to view the tape.  Id. at 118.  Defense counsel moved for a judgment of acquittal, which was taken under advisement until the court could review the videotape

of the victim.  Id. at 181.  The defense called Alice Black.  Id. at 183.  Petitioner took the stand as well.  Id. at 218. Petitioner reconsidered his decision and watched the videotape. Id. at 283.

Defense counsel moved for a judgment of acquittal at the close of all of the evidence, noting that the court had taken the motion under advisement.  Id. at 284.  The motion was denied.  Id. at 290. The state conceded that it was unable to prove the time frame as to the digital penetration.  Id.  Closing arguments were provided. Id. at 292-305.  The court concluded "there was no direct evidence or indirect evidence of the elements" of digital penetration, and the Petitioner was adjudged not guilty of count four.  Id. at 306. Petitioner was adjudged guilty of counts one, two and three (two counts of sexual battery and one count of lewd or lascivious molestation).  Id. at 307.

In denying the amended Rule 3.850 motion, the trial court concluded:

> In sum, the defendant is offended by virtually everything which has transpired during the course of his prosecution.  The defendant's current motion, though verbose, has failed to set forth a single ground indicating any inefficient [sic] performance on the part of defense counsel which would have in any way affected the outcome of the trial.

Ex. P at 109.

Petitioner makes a rather spurious allegation that there was a sexual relationship between the prosecutor, Gabriella Young, and

defense counsel, Craig Martin.  Petition at 58.  Other than Petitioner's vague and conclusory allegation, no operative facts have been presented which support this allegation.  In his Reply, Petitioner references Florida Bar documents in support of this allegation, but these documents, at best, show that Petitioner complained to the Florida Bar that defense counsel Craig Martin received a police report from him and refused to return the document or to respond to Petitioner's letters concerning the document.  Petitioner's Exhibit 5, Report of the Referee Accepting Consent Judgment, dated June 1, 2004.  (Doc. #71, filed July 16, 2010).[8]  Nothing in these Bar documents suggests or supports a claim that a sexual relationship existed between the prosecutor and defense counsel.  Petitioner has utterly failed to show that there was a conflict of interest between himself and defense counsel Craig Martin based on some sexual relationship between defense counsel and the prosecutor.

Petitioner suggests that had his counsel been conflict free, he would have presented exculpatory medical evidence showing no signs of sexual abuse and that the child victim's hymen was intact. As noted by Respondents, even if there had been an expert witness

_____

[8] The trial occurred on February 26, 2002, long before the Florida Bar Complaint against defense counsel on April 20, 2004. The Court recognizes that, due to a number of professional infractions unrelated to this case (except for the failure to return the police report mentioned above), Craig Martin was suspended for thirty months by the Supreme Court of Florida on June 17, 2004.  Petitioner's Exhibit 5, Order, June 17, 2004.  (Doc. #71, filed July 16, 2010).

to testify to the lack of penetration or the tearing of the hymen, such evidence would not have altered the result of the bench trial. Response at 30. The Amended Information charged union (placing his penis in or upon the vagina of the victim), oral sex (placing his penis in or upon the mouth of the victim), and lewd touching (did in a lewd or lascivious manner intentionally touch the genitals or clothing covering the genitals of the victim). Ex. B at 56. The trial court adjudged Petitioner not guilty of the fourth count, digital penetration, finding no evidence of such. Thus, even if there had been expert testimony concerning the lack of penetration of the vagina, there was sufficient evidence to support the convictions on counts one, two and three as charged in the Amended Information. There was no prejudice to Petitioner in any failure to obtain an expert concerning whether or not there was evidence of penetration.

With regard to a claim of prosecutorial misconduct, the trial court, in addressing ground thirteen of the amended Rule 3.850 motion, held:

> As mentioned in prior grounds, the State, according to the defendant, has misled the Court, committed fraud and egregious misconduct, and has suborned perjury, etc. This particular diatribe is exclusively against the prosecution. It is also without legal or factual basis.

Ex. P at 105.

The conviction was affirmed on direct appeal on August 30, 2004. Ex. M. The mandate issued on October 1, 2004. Ex. O. The

trial court rejected Petitioner's assertions that trial counsel was ineffective, there was a substantiated conflict of interest between Petitioner and his defense counsel, the conviction was a result of prosecutorial misconduct, or that the bench trial was a charade. Ex. P. This decision was affirmed on appeal. Ex. S.

The adjudications of the state courts resulted in decisions that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Petitioner is not entitled to relief on ground four because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts. <u>See</u> Response at 32. In the alternative, Petitioner is not entitled to relief on ground four.

## XI. Ground Five

In his fifth ground, Petitioner asserts his counsel was ineffective for failing to investigate and call witnesses at the hearsay hearing. Petition at 64. This is the same claim as raised in ground two. <u>See</u> *supra* ground two; Response at 32. AEDPA deference is due, and Petitioner is not entitled to relief on ground five.

## XII. Ground Six

In his sixth ground, Petitioner claims that his conviction was a result of counsel's ineffectiveness and prosecutorial misconduct. Petition at 70. In support of this ground, Petitioner mentions

"fraudulent subpoenas" concerning a different individual.  Id.
There was a full hearing on the motion to suppress.  Ex. B at 352-
437.  The motion was denied.  Id. at 436-37.  Petitioner raised an
ineffectiveness claim concerning this matter in ground two of the
Petition.  Petition at 45-50.  Petitioner raised this issue in a
number of his claims in his amended Rule 3.850 motion.  The trial
court rejected his claims.  Ex. P at 101-102, 104-105.  The court
explained:

> In this ground, the defendant accuses all
> the prosecutors and his own attorney with
> having been involved in a conspiracy to
> provide false information to this Court during
> the course of a suppression hearing occurring
> several weeks before the trial in this cause.
> The defendant again levels accusations that
> the evidence introduced at the suppression
> hearing was false or fraudulent or fabricated.
> This Court can only observe that the matter of
> the suppression hearing conducted was
> preserved for appellate review and affirmed
> along with the defendant's trial conviction.

Id. at 101-102.  The court continued:

> In this ground the defendant claims that
> the motion to suppress filed by defense
> counsel was inadequate but the defendant fails
> to specify the inadequacy.  The defendant
> again accuses everyone of having been involved
> in a conspiracy to see that he was convicted.
> The defendant apparently is of the opinion
> that the State Attorney's Office needed a
> warrant to obtain the letters written by the
> defendant instead of an investigative
> subpoena.  As noted in the defendant's
> previous ground, defense counsel did file a
> motion to suppress and this Court conducted an
> evidentiary hearing on that motion.  The
> matter was preserved for appellate review.
> The defendant's current ground is really
> nothing more than another broadside attack

> without basis or showing of how defense
> counsel could or should have done anything
> different and, further, that it would have
> affected the outcome of the defendant's trial.

Id. at 102.

With respect to the state's actions, the trial court said:

> In this particular ground, the defendant
> again complains that the letters taken from
> his wife were not done pursuant to proper
> process and that somehow the State altered the
> process in violation of Brady. There is
> nothing in this particular ground which shows
> in any manner a factual contention that the
> State did anything to hide information
> indicating the defendant's innocence. Instead,
> this ground is another attack by the defendant
> on the process of obtaining evidence which
> was, as previously noted, the very ground
> considered by this Court during the course of
> the suppression hearing. Accordingly, the
> defendant has failed to provide any factual or
> legal support for this claim.

Id. at 104.

Finally, the trial court rejected the claims of ineffectiveness of counsel and prosecutorial misconduct stating:

> In this ground, the defendant again
> accuses everyone of being responsible for his
> conviction because of a vast conspiracy
> involving the prosecutors, defense counsel,
> and the court reporter, not to mention the
> Jacksonville Sheriff's Office. As in each of
> his previous grounds, the defendant has failed
> to provide any legal basis or factual support
> for his contention. Instead, this ground is
> merely a shotgun attack on the legal process
> to which the defendant was exposed.

Id. at 104-105. The court also rejected a claim of prosecutorial misconduct raised in ground thirteen of the amended Rule 3.850

motion.  Id. at 105.  The denial of the amended post conviction motion was affirmed on appeal.  Ex. S.

Upon review, there was no unreasonable application of clearly established law in the state court's decision to reject the Strickland ineffectiveness claim.  Indeed, the decisions of the state trial and appellate courts are entitled to deference under AEDPA.  The adjudications of the state courts resulted in decisions that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground six, the claim of ineffective assistance of trial counsel, because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Additionally, AEDPA deference is due to the state courts' adjudication of Petitioner's claim of prosecutorial misconduct. The adjudication of the state courts resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on ground six, the prosecutorial misconduct claim, because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal

law, and were not based on an unreasonable determination of the facts.

### XIII.  Ground Seven

Petitioner, in his seventh ground, asserts that counsel was ineffective for failing to advise him of the state plea offer and the mandatory penalty of life that could be imposed.  Petition at 76.  In the Petition, he asserts that he learned of the plea offer during the August 28, 2001, pretrial hearing, when the offer was withdrawn by the prosecutor.  Id.

This claim is unexhausted and procedurally defaulted.  See Response at 34.  Petitioner has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if this ground is not addressed on the merits.

In the alternative, this claim has no merit.  In Petitioner's letter to Alice Black, dated March 31, 2001, Petitioner states that he is facing life imprisonment.  Ex. EEE.  In his letter of June 15, 2001, Petitioner mentions the fifteen-year offer from the state.  Id.  At the pretrial proceedings on August 28, 2001, it was quite apparent that Petitioner did not want to accept the offer of fifteen years followed by ten years probation.  Ex. I at 13.  See Response at 35.  Defense counsel, Ms. Hanania, stated that Mr. Black was willing to resolve the case for time served, but the state was not going to engage in further negotiations after the rejection of the fifteen-year offer.  Ex. I at 15.

Petitioner, in his eighth ground, claims the trial judge was biased.  Petition at 78.  Specifically, Petitioner contends that the judge had a personal interest in the case after Petitioner gave him a copy of a civil suit.  Id.  On April 30, 2001, Petitioner filed a civil rights action against the State Attorney; Waffa Hanania, Assistant Public Defender; the Honorable Michael R. Weatherby, the trial judge; and the detective.  See Case No. 3:01-cv-455-J-25TJC.[9]  The action was promptly dismissed without prejudice by this Court on May 7, 2001, for the *pro se* Plaintiff's failure to sign the Complaint.  Case No. 3:01-cv-455-J-25TJC, Order of Dismissal Without Prejudice (Doc. #3).[10]  Petitioner has failed to show how the filing and immediate dismissal of the civil rights action resulted in the trial judge being biased in the criminal case.  Petitioner even noted in the civil rights action that the trial judge was immune from the lawsuit.  Case No. 3:01-cv-455-J-25TJC, Complaint (Doc. #1 at 7, 10).

Petitioner complains that the trial judge watched the hearsay evidence videotape of the child victim at his home, but the court

---

[9] The Court takes judicial notice of Case No. 3:01-cv-455-J-25TJC.

[10] The copy of the civil rights complaint in the state criminal record is not identical to the one filed in this Court in Case No. 3:01-cv-455-J-25TJC.  See Ex. B at 20-31.  However, it does include, in the upper caption, the Jacksonville Division of the United States District Court for the Middle District of Florida, and it actually references the federal case number.

did not play the videotape, in court, on July 12, 2001, the date of the hearing. Ex. B at 303-33. The record shows that the videotape was provided to the court and to defense counsel. Id. at 306, 309. The Detective, Carla D. Roberts-Jones, attested to the circumstances surrounding the videotaped interview of the child victim. Id. at 307-11. The court stated that it reviewed the entire tape, but did not find it to be untrustworthy. Id. at 329.

Petitioner also complains that the trial court failed to conduct an adequate Faretta[11] hearing when Petitioner complained about his defense counsel.[12] The allegation that the trial court failed to conduct an adequate Faretta inquiry was raised on direct appeal as Issue I. Ex. J at 38-42. The state responded that Petitioner's request to represent himself was equivocal. Ex. K at 10-13. The First District Court of Appeal affirmed per curiam on August 30, 2004. Ex. M. The mandate issued on October 1, 2004. Ex. O.

Finally, Petitioner asserts that the trial judge appeared to have made his decision on guilt or innocence prior to the start of the trial. Petition at 81. Respondents first contend that Petitioner's claim of bias was not properly exhausted in the state

---

[11] Faretta v. California, 422 U.S. 806 (1975).

[12] Although Petitioner states that his request to proceed *pro se* was raised during an August 28, 2001, hearing, see Petition at 79, the appeal brief states it was during a November 13, 2001, hearing. Ex. J at 39-40. See Ex. B at 345-50, the transcript of the November 13, 2001 proceedings.

courts as it should have been raised on direct appeal.  Response at 35.  Upon review, the claim of trial court bias was not raised on direct appeal, and is procedurally defaulted.  Petitioner has not shown cause and prejudice or that a fundamental miscarriage of justice will result if the claim is not addressed on the merits.

In the alternative, the claim was sufficiently presented in the amended Rule 3.850 motion and was rejected by the trial court as being without factual or legal basis.  Ex. P at 107.  The decision was affirmed on appeal.  Ex. S.  This decision is entitled to AEDPA deference.  Upon a thorough review of the record and the applicable law, the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See Response at 35-37.  Accordingly, Petitioner is not entitled to relief on the basis of ground eight.

Finally, and alternatively, the claim is without merit. Albeit the trial judge did exhibit some frustration with Petitioner and his multiple complaints about everyone involved in the case, from the Sheriff's Office to the prosecutors and defense counsel, see Ex. B at 350; however, the pretrial proceedings and the bench trial were conducted in a thorough and meticulous manner, and there was more than sufficient evidence to support Petitioner's conviction.  Petitioner was primarily dissatisfied with the trial

court's rulings concerning the victim's videotaped statement and the seizure of his letters to his wife. The trial court's rulings were made after full hearings, and do not support a claim of judicial bias. Response at 35-37.

## XV.  Ground Nine

In ground nine of the Petition, Petitioner claims his trial counsel was ineffective, resulting in Petitioner being denied his fundamental rights on appeal when the state undermined the appellate process. Petition at 83-84. Petitioner again asserts that his counsel, Craig Martin, was involved in a relationship with the prosecutor, Gabriella Young. Id. at 84. As noted previously, this claim is vague and conclusory and wholly unsupported by the record. See *supra* ground four.

Petitioner asserts that counsel's alleged relationship with the prosecutor caused counsel's failure to obtain a copy of the July 12, 2001, hearing transcript. Id. This claim is refuted by the record. The Designation to Court Report for Stenographic Notes asks for a transcription of the trial proceedings and all other court proceedings with the Clerk. Ex. B at 293-94. More specifically, it asks for the entire hearing and proceedings on July 12, 2001 and November 16, 2001, as well as other proceedings. Id. Financial arrangements were made for preparation of the transcripts. Id. at 295.

Petitioner also complains that the sentencing proceedings were incomplete; however, counsel specifically asked for the entire

sentencing and proceedings.  Id. at 293.  Thus, trial counsel's performance was not deficient in this regard.[13]

Petitioner asserts there were two attorneys who were listed as counsel of record, but they were never appointed.  The trial court docket shows S. Stanfield as court appointed counsel.  Ex. A, docket at 10.  However, the Public Defender had been permitted to withdraw, and Petitioner had retained counsel, Brett Kocijan and Craig Martin.  Id. at 8-10.  Assistant State Attorney James Kallaher is listed on the docket entry for February 26, 2002.[14]  Id. at 10.  Assuming arguendo S. Stanfield and James Kallaher were incorrectly listed as participants in the case, Petitioner was certainly not prejudiced by this action.

Counsel's performance was not deficient as Craig Martin requested the trial proceedings and all other court proceedings be transcribed by the court reporter.  Petitioner has failed to show a reasonable probability that the outcome of the proceeding was negatively affected by counsel's performance.  Petitioner has failed to show prejudice as required under the second prong of Strickland.  He is not entitled to habeas relief on ground nine.

To the extent that Petitioner is blaming the state for undermining his appeal, the alleged misconduct of the state would

---

[13] Of note, Petitioner was represented by the Public Defender's Office on direct appeal.  Ex. J.

[14] The Court notes that a number of Assistant State Attorneys filed documents and were involved in the criminal case.

not constitute the ineffective assistance of defense counsel. The
trial court rejected ground two of the amended Rule 3.850 motion,
claiming the appeal was undermined by fraud and conspiracy to
obstruct justice in the state courts, by stating the following:

> While the defendant's claim is certainly
> less than clear, he appears to complain that
> someone unspecified has tampered with the
> appellate record in this cause. He also
> suggests that transcripts of one or more
> hearings which occurred were "fabricated." He
> also alleges and specifically names each of
> the Assistant State Attorneys who handled his
> case as having been involved in a conspiracy
> in violation of their oaths of office. While
> perhaps interesting, the claims seemingly
> raised in this ground have nothing to do with
> ineffective assistance of counsel and, is
> therefore, outside of the perimeters [sic] of
> Rule 3.850.

Ex. P at 97.

Thus, this portion of the claim is procedurally defaulted.
Petitioner has not shown cause and prejudice or that a fundamental
miscarriage of justice would result if this portion of the claim is
not addressed on the merits.

In denying ground eleven of the amended Rule 3.850 motion,
with respect to Petitioner's claiming the cumulative effect of
counsel's ineffectiveness and prosecutorial misconduct denied
Petitioner due process and equal protection of the law, the trial
court said:

> In this ground, the defendant again
> accuses everyone of being responsible for his
> conviction because of a vast conspiracy
> involving the prosecutors, defense counsel,
> and the court reporter, not to mention the

> Jacksonville Sheriff's Office. As in each of
> his previous grounds, the defendant has failed
> to provide any legal basis or factual support
> fo his contention.  Instead, this ground is
> merely a shotgun attack on the legal process
> to which the defendant was exposed.

Id. at 105.

In addition, in ground nine, Petitioner complains about an

erroneous Presentence Investigation Report (PSI).  The claim that

counsel was ineffective when he failed to investigate and timely

object to the erroneous PSI report was denied by the trial court:

> In this particular ground, the defendant
> accuses  the  author  of  the  presentence
> investigation report of false analysis, false
> reporting    of    information,    false
> recommendations, etc.  The defendant has also
> accuses [sic] officers of the Department of
> Corrections of becoming part of the conspiracy
> to imprison the defendant.  The defendant has
> failed to show in any respect how the PSI in
> any way affected his conviction. Accordingly,
> this particular ground is also without basis.

Id. at 105.

Also, the trial court denied ground seventeen of the amended

Rule 3.850 motion, claiming a denial of Petitioner's fundamental

right to a fair appeal due to the misconduct of the Clerk's Office.

In rejecting this claim, the court said:

> The defendant spends some five pages of
> his motion alleging assorted nefarious acts by
> the Clerk's Office which range from removing
> information from the court file to adding the
> names of different attorneys to the docket
> entries  in  this  cause.   The  defendant's
> particular attack in this ground, as before,
> fails to establish any ground contemplated by
> Rule 3.850.   Accordingly,  this  particular
> ground fails on its face.

Id. at 107.

Finally, the trial court denied ground nineteen of the amended Rule 3.850 motion, in which Petitioner claimed prosecutorial misconduct violated his right to effective assistance of counsel and denied him due process of law. In denying this claim, the court explained:

> In this claim, the defendant again attacks the prosecution for assorted ills, all of which have been resolved by conviction and direct appeal or which are not a proper subject for post-conviction relief under Rule 3.850. The defendant also attacks the Clerk of the Court and the court reporters. As before, the defendant has failed to provide a factual or legal basis for this claim.

Id.

The trial court's denial of Petitioner's amended Rule 3.850 motion was affirmed on appeal. Ex. S. The decisions of the state courts in denying Petitioner's claim of ineffective assistance of counsel, prosecutorial misconduct and the related claims resulted in decisions that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d). Accordingly, Petitioner is not entitled to relief on ground nine because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

With respect to his claim of ineffective assistance of trial counsel, Petitioner has failed to satisfy either prong of the Strickland test, that is, he has failed to show deficient performance by counsel and he has failed to show a reasonable probability, that but for his performance, the result of the proceeding would have been different. Confidence in the outcome of the proceedings has not been undermined. Thus, Petitioner is not entitled to relief on this ground. Therefore, ground nine is denied.

## XVI.  Ground Ten

In his tenth ground, Petitioner claims counsel was ineffective for failing to obtain a medical expert witness. Petition at 91. This claim was soundly rejected by the trial court:

> In this ground [ground fourteen of the amended Rule 3.850 motion], the defendant complains that trial counsel failed to call an expert witness to testify regarding the physical examination of the child's genitalia at the time the defendant was arrested. The defendant appears to believe that the fact that the victim's hymen remained intact means that the defendant could not have had sexual contact with the child. This suggestion, of course, also overlooks the victim's testimony that there had been oral sex and that on occasion the defendant had applied a lubricant to his penis. (Trial Transcript pp 51-54).

> The matters raised in this ground attack the sufficiency of the evidence at trial and not defense counsel's professional conduct. Matters of the sufficiency of trial evidence are reserved for direct appeal. Accordingly, the defendant has failed to establish a basis for this particular ground.

Ex. P at 105-106.

The fundamental problem with this claim is that Petitioner was charged with placing his penis "in or upon the vagina" of the child victim. Ex. B at 56. Thus, even if a medical expert had been called to testify concerning penetration, the state did not have to prove the element of penetration. Instead, the state could simply put forth sufficient evidence to support a conviction based on the union with the sexual organs of the victim. The digital penetration count was dismissed by the court. None of the remaining counts required proof of penetration of the vagina.

Petitioner has failed to show deficient performance. Moreover, he cannot show prejudice. Response at 40-41. The only count requiring penetration was dismissed. The trial court's ruling, affirmed by the appellate court, was not contrary to or an unreasonable application of United States Supreme Court precedent. The decision denying the claim of ineffective assistance of counsel was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground ten is denied.

## XVII.  Ground Eleven

In his eleventh ground, Petitioner alleges that appellate counsel was ineffective because counsel failed to assert that the trial court lacked subject matter jurisdiction. Petition at 94. Respondents assert that this claim is unexhausted and procedurally barred as it was not fairly presented to the state court. Response

at 41. Petitioner asserts that this claim was raised in his Petition for Writ of Habeas Corpus. Ex. X.

Upon review, Petitioner did claim his appellate counsel was ineffective for failing to raise a claim that the trial court lacked jurisdiction. Id. Thus, the claim was exhausted, and it is not procedurally defaulted. The petition was denied on its merits. Ex. Y. Thus, there is a qualifying state court decision. Furthermore, it is entitled to AEDPA deference.

Upon a thorough review of the record and the applicable law, the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Petitioner is not entitled to relief on the basis of ground eleven.

Alternatively, this claim has no merit. See *supra* ground one. Appellate counsel was not ineffective for failing to raise a non-meritorious claim, and Petitioner was not prejudiced by his performance, as evidenced by the denial of the state petition for writ of habeas corpus.

## XVIII. Ground Twelve

Petitioner, in his twelfth ground, alleges that his conviction was based on a fraudulent information, and this happened as a result of trial counsel's conflict of interest. Petition at 97. Petitioner suggests that he was surprised that he was tried on an

amended information.  Id. at 98.  He again complains that there was
a personal relationship between the prosecutor, Gabriella Young,
and his counsel, Craig Martin, and this relationship interfered
with counsel challenging the amended information.  Id.  Petitioner
alleges that the prosecutors secretly replaced the July 12, 2001,
one count information, with a multiple count information.  Id. at
98, 100.  He also asserts that the amended information was not
signed by Libby Senterfitt, and it was not based on material
witnesses' statements.  Id. at 98.

This issue was raised in the amended Rule 3.850 motion as
ground sixteen, and it was addressed by the trial court and denied:

> Although it is not exactly clear, in this
> particular ground it seems that the defendant
> is contending that some form of prosecutorial
> vindictiveness occurred when the State added
> the word "lewd" to an amended information
> filed against the defendant.  It seems the
> defendant believes this must be the case
> because before the amended information was
> filed, the defendant told his attorney know
> [sic] that he had filed a federal civil rights
> complaint against her[15] and the prosecutor.
>
> The defendant also believes that the
> amended information was filed by a non-
> existent Assistant State Attorney by the name
> of "Libby Senterfitt."  According to the
> defendant, no one by that name is a member of
> the Florida Bar or listed with the Department
> of State.  In the defendant's view, therefore,
> the information is null and void and
> represents malfeasance and fraud upon the
> courts.

---

[15] Petitioner was represented by Assistant Public Defender
Waffa Hanania.

> This [is] another interesting complaint
> by the defendant.  Libby Senterfitt is well
> known to this Court.  At the time of the
> defendant's trial, Mrs. Senterfitt was, and
> remains, the senior assistant state attorney
> in charge of the Sexual Assault Division of
> the State Attorney's Office for the Fourth
> Judicial Circuit.

Ex. P at 106-07.  This decision was affirmed.  Ex. S.

Simply, the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Petitioner is not entitled to relief on the basis of ground twelve.

In the alternative, this claim is due to be denied on the merits.  The amended information, sworn to on July 6, 2001, was signed by Libby Senterfitt, an Assistant State Attorney.  Ex. B at 56-57.  The record shows that, on July 12, 2001, the reading of the amended information was waived and a not guilty plea was entered. Ex. A at 5.  This occurred while Petitioner was represented by Assistant Public Defender Waffa Hanania.  Id.

Upon review of the transcript of the July 12, 2001, proceeding, Petitioner was present.  Ex. B at 306.  When the court referenced the amended information, Ms. Hanania responded:

> I have here an amended information that
> was apparently filed on July 6th.  At this
> time, on Mr. Black's behalf, I would
> acknowledge receipt of that amended

information, I will waive formal reading
reserving the right to file motions attacking
it's [sic] legal sufficiency and enter pleas
of not guilty as to all counts.

Id. at 335. Ms. Hanania assured the court she would review the
amended information to determine whether it would affect the
discovery process. Id. at 336.

First, Petitioner's claim that he was surprised by being tried
on the amended information is a disingenuous assertion since
Petitioner was present at the July 12, 2001 proceeding when the
amended information was discussed. It was not a secret amended
information. Next, Petitioner was not represented by Craig Martin
during these events. In fact, Petitioner did not retain Mr. Martin
until 2002, on the eve of trial, after the public defender was
permitted to withdraw from the case. Ex. A at 9. Thus, as noted
by Respondents, it is absurd for Petitioner to suggest that the
failure to challenge the amended information was due to some
illicit relationship between Mr. Martin and the prosecutor.
Response at 45. Finally, Petitioner has failed to show that there
was a valid basis to challenge the amended information. Petitioner
is not entitled to relief on this ground.

## IX. Ground Thirteen

Petitioner asserts that his counsel was ineffective for
failing to object to the admission of the hearsay videotape

evidence (the videotape of the child victim).[16]  Petition at 102.

This claim was presented in ground twenty-one of the amended Rule

3.850 motion for post conviction relief.  The court, in rejecting

this claim, held:

> In this particular ground, the defendant
> contends that trial counsel failed to object
> to the admission of the victim's videotaped
> statement given to the child protection team
> counselor.  The defendant fails to acknowledge
> that the defense counsel's objection to the
> admissibility of that tape is exactly why this
> Court conducted an admissibility hearing on
> the admission of all of the child's out-of-
> court statements in accordance with statute
> and case law then in effect.  Again, the
> defendant has failed to advance a legal ground
> or factual support for this claim.

Ex. P at 108-09.  This decision was affirmed by the First District

Court of Appeal.  Ex. S.

The decisions of the state courts are entitled to AEDPA

deference.  The adjudications of the state courts resulted in

decisions that involved a reasonable application of clearly

established federal law, as determined by the United States Supreme

Court.  Therefore, Petitioner is not entitled to relief on ground

thirteen because the state courts' decisions were not contrary to

clearly established federal law, did not involve an unreasonable

application of clearly established federal law, and were not based

---

[16] A transcript of the audio recording of Exhibit MMM (Doc.
#59) was directed to be filed with the Court, and was filed, *in
camera*, on May 18, 2011.  S-2.

on an unreasonable determination of the facts in light of the evidence presented.

Upon review of the record, on July 12, 2001, a hearing was conducted on the reliability of the child victim's statements contained within the videotape. Ex. B at 303-31. The court, after reviewing the tape, concluded: "I can't find anything that would be -- even make me remotely suspect there was anything untrustworthy about it." Id. at 329. The court commented that there were no leading questions by the detective. Id. at 330. He described the eleven-year-old child victim as embarrassed by what had transpired, but in control of her faculties. Id. He also found nothing threatening about the location of the interview. Id.

On February 25, 2002, Craig Martin filed a Motion in Limine, asking the court to direct several witnesses not to testify to hearsay statements allegedly made by the child victim or to comment on her credibility. Ex. B at 169-70. On February 26, 2002, the court addressed the motion in limine which sought exclusion of hearsay statements made by the child victim to child protection workers and Detective Roberts Jones. Ex. C at 7. The court considered the admissibility of the statements. Id. at 8. The motion in limine was denied on February 26, 2002. Id. at 12-13; Ex. B at 171. The court agreed, however, that the witnesses could not comment on the child victim's credibility. Ex. C at 12.

Petitioner is not entitled to relief on the basis of ground thirteen of the Petition. He has shown neither deficient performance nor prejudice based on counsel's actions.

## XX. Ground Fourteen

Ground fourteen raises a claim of prosecutorial vindictiveness and a claim that there was a failure of the state to prove the essential elements of the crimes. Petition at 105. Once again, Petitioner asserts he was tried on a secret, fraudulent four count amended information. Id. at 106. As previously noted, this claim has absolutely no merit. Petitioner also asserts that the state failed to prove penetration. Id. at 106. As previously addressed, the state did not have to prove penetration with respect to the three counts upon which Petitioner was convicted. Petitioner was acquitted of the digital penetration count. Petitioner claims that counsel's alleged sexual relationship with the prosecutor caused defense counsel to take a "no trial strategy" approach to the case. Id. at 107. Again, Petitioner's vague and conclusory claim of a sexual relationship between defense counsel and the prosecutor will not justify habeas relief. Petitioner suggests that the prosecutor wanted to secure a conviction to prevent a lawsuit, after receiving a copy of Petitioner's civil rights complaint filed in federal court. Id. at 105. As previously noted, the civil rights complaint was immediately dismissed by this Court. See *supra* ground eight.

The trial court addressed Petitioner's claim that his conviction came about due to the prosecutor's vindictiveness and the lack of proof of the essential elements of the crimes. Ex. P at 108. In denying ground twenty of the amended Rule 3.850 motion, the court found:

> In this ground, the defendant again casts as many aspersions as he possibly can do so against the prosecution. The defendant also revisits (from a previous pleading) his contention that the State failed to prove each of the elements of the offense. As noted previously, the defendant's conviction was affirmed on appeal. Accordingly, defendant cannot now complain about the quality of the evidence introduced against him by the State.
>
> In this ground, the defendant also contends that defense counsel was ineffective in calling the 20-30 alibi witnesses who were all traveling together to Tallahassee. As one might expect at this point, the defendant has failed to name any of the witnesses, failed to assert what they would testify to, and has certainly failed to cite that any of them was available at the time of the trial.
>
> More importantly, this particular ground contends that the defense counsel was somehow ineffective in failing to call into question the victim's inability to assert specifically the date(s) of the offense(s). Interestingly enough, on this particular ground the defendant is somewhat correct. That he is correct in this matter has already led to this Court's entry of a judgment of acquittal on one of the counts. Accordingly, the defendant has failed to show that counsel's conduct was ineffective at trial as counsel did exactly what defendant has now suggested that he should have done.

Ex. P at 108. The court's ruling was affirmed on appeal. Ex. S.

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. See id. at § 2254(e)(1). The findings of the trial court are presumed to be correct, 28 U.S.C. § 2254(e), and Petitioner has failed to rebut this presumption by clear and convincing evidence.

Upon a thorough review of the record and the applicable law, the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Petitioner is not entitled to relief on the basis of ground fourteen.

The Due Process Clause of the Fourteenth Amendment requires the state to prove beyond a reasonable doubt each element of the offense charged. Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997)(citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)), cert. denied, 522 U.S. 1125 (1998). The relevant question is whether the trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found the essential

elements of the charged offense beyond a reasonable doubt. Thompson, 118 F.3d at 1448.

The Court agrees with Respondents that, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact, in this case the trial judge, could have found Petitioner committed the offenses of sexual battery (two counts) and lewd or lascivious molestation. See Response at 48-49.

The child victim testified. Ex. C, Trial Transcript at 25-78. She testified as to her age and birth date. Id. at 27. She identified Petitioner Timothy Black as the individual who committed the offenses. Id. at 28. She attested that Petitioner is her stepfather, and she lived with him and her mother, and attended Mayport Elementary School. Id. at 28-29. She also testified as to the sexual offenses committed by Petitioner. Id. at 25-55. In addition, her taped interview was admitted into evidence. Id. at 105.

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the convictions for sexual battery (two counts) and lewd or lascivious molestation. Competent evidence of the elements of the offenses was introduced at trial, and no due process violation occurred. Petitioner is not entitled to habeas relief on ground fourteen.

## XXI.  Ground Fifteen

Petitioner, in his fifteenth ground, alleges counsel was ineffective for failing to move to lower his bond. Petition at

109. This claim was raised in ground eight of the amended Rule 3.850 motion. In denying this ground, the court said:

> In this ground, the defendant contends that his original public defender and privately retained defense counsel were ineffective in failing to file motions to reduce his bond. The defendant's motion fails to show how the failure to file a bond motion, if that happened, in any way affected his conviction in this cause.

Ex. P at 103. On appeal, the First District Court of Appeal affirmed this decision. Ex. S.

Deference should be given to the state courts' decision. Indeed, the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Petitioner is not entitled to relief on the basis of ground fifteen.

In the alternative, Petitioner has failed to satisfy either prong of the Strickland test, that is, he has failed to show deficient performance by counsel and he has failed to show a reasonable probability, that but for his performance, the result of the proceeding would have been different. Confidence in the outcome of the proceedings has not been undermined. See Response at 52-53.

## XXII.  Ground Sixteen

In his sixteenth ground, Petitioner claims his counsel was ineffective for failure to investigate and file a timely motion to show inducement of the victim.  Petition at 112.  He claims the state purchased the child victim's testimony, realizing that she did not want to return to Jamaica and she wanted to be returned to her mother.  Id. at 113.

The trial court, in its factual summary of the case, explained:

> When the investigating detective confronted [Petitioner] with his step-daughter's statements, the defendant gave relatively detailed oral and written statements acknowledging that the incidents had happened.  However, the defendant placed the responsibility on the child by relating that on a number of occasions he had awakened and found the child on top of him with his penis exposed.  The defendant also told the investigating detective that it was likely that the child had started her stories because there had been a family argument about the defendant sending the child back to her native home in Jamaica.  At the time the defendant was arrested, the only reason that the child and her mother were legally in the United States was because the mother had married the defendant, an American citizen.
>
> While in custody, the defendant wrote some 80 letters to his wife containing assorted threats to divorce her and thereby force her and the child to return her to Jamaica.  One of the letters included a "drop affidavit" prepared by the defendant in his own handwriting for his wife's signature.  Also included in the letters were various statements placing the blame on the child for being sexually active and for initiating the sexual contact with the defendant.

When the wife and daughter appeared at
the State Attorney's Office attempting to drop
charges using the affidavit created by the
defendant, the Assistant State Attorney
deduced that the defendant might have been
having inappropriate contact with his wife and
step-daughter and might have been threatening
the wife. Along with the defendant's drop
affidavit which she had signed, the wife
presented a letter from the victim recanting
the statements which she had made implicating
her step-father. On the day the defendant's
wife attempted to drop the charges, an
investigator from the State Attorney's Office
accompanied the wife to her residence and
served an investigative subpoena on her. The
subpoena was for the production of any
correspondence written to her by the defendant
from the County Jail. Some 23 of those
letters were introduced at trial. Of those,
some 4 or 5 were subjected to handwriting
comparisons.

The child later withdrew her recantation.
As a result of the defendant's contact with
the child and her mother, the Division of
Family Services removed the child from the
mother's care and placed her in a foster
residence. The child was living with the
foster family at the time she testified at the
trial.

Ex. P at 94-95.

The claim that counsel was ineffective for failure to
investigate and file a timely motion to show inducement of the
victim was presented in ground nine of the amended Rule 3.850
motion, and the trial court rejected Petitioner's claim of
ineffectiveness finding:

As best as can be interpreted from this
ground, the defendant seems to contend that
defense counsel was ineffective for failing to
file a motion to show that the victim was in
some manner influenced by her mother and/or

- 51 -

> law enforcement officers to testify against
> the defendant.  The defendant seems to argue
> that the victim's recantation of her
> recantation was a ploy induced by the State
> Attorney's Office who provided clean clothing
> for the child to wear at trial and by
> attorneys who somehow knew the defendant had
> threatened the child with deportation to
> Jamaica.
>
> The defendant's claim is anything but
> clear.  The child's credibility was clearly
> made an issue during the course of the trial
> and was fully addressed by both the state and
> the defense.  Defendant has failed to show
> anything that the defense counsel could have
> done on this particular issue which was not
> done or which would have in any way affected
> the outcome of the proceedings.

Id. at 103-04.  This decision was per curiam affirmed.  Ex. S.

The decisions of the state courts are entitled to deference under AEDPA.  The adjudications of the state courts resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on ground sixteen, the claim of ineffective assistance of trial counsel, because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  See Response at 53-54.

This Court finds that "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the §

2254(d)(1) standard, see Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam), [Petitioner's] ineffective-assistance claim fails." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). Therefore, Petitioner is not entitled to habeas corpus relief on ground sixteen.

## XXIII.  Ground Seventeen

Petitioner claims his counsel was ineffective for failing to object to the PSI. Petition at 115. In its Order Denying Amended Motion for Post-conviction Relief, the trial court considered this claim and stated:

> In this particular ground, the defendant accuses the author of the presentence investigation report of false analysis, false reporting of information, false recommendations, etc. The defendant has also accuses [sic] officers of the Department of Corrections of becoming part of the conspiracy to imprison the defendant. The defendant has failed to show in any respect how the PSI in any way affected his conviction. Accordingly, this particular ground is also without basis.

Ex. P at 105. This decision was affirmed on appeal. Ex. S.

The fundamental weakness of the claim is that Petitioner was convicted of capital sexual battery, which meant the trial court had no discretion as to the sentences for the capital sexual battery counts. Petitioner received sentences of natural life for the two counts of sexual battery, and thirty years for the lewd and lascivious count. Ex. B at 238-41, 483-44. The thirty-year sentence is concurrent with the life sentences, and will not extend

Petitioner's term of imprisonment.  $\underline{Id}$. at 240, 484.  Thus, Petitioner cannot show prejudice.  $\underline{See}$ Response at 55.

Petitioner has failed to satisfy either prong of the $\underline{Strickland}$ two-pronged standard.  Counsel's performance was not deficient, and Petitioner was not prejudiced by counsel's performance.  Petitioner is not entitled to habeas relief on grounds seventeen of the Petition.

The decisions of the trial court and the First District Court of Appeal are entitled to AEDPA deference.  The adjudications of the state trial and appellate courts resulted in decisions that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on ground seventeen because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts.

## XXIV.  Ground Eighteen

Petitioner alleges that appellate counsel was ineffective for failing to have the record on appeal corrected.  Petition at 118. Petitioner complains that he told his appellate counsel that the appellate record contained erroneous and false documents.  $\underline{Id}$.  He complained that the suppression hearing transcript from November 16, 2001, consisted of 84 pages, but the same transcript on appeal consisted of 90 pages.  $\underline{Id}$.  Petitioner adds that the August 28,

2001, transcript was fabricated. Id. at 119. He contends that the August 3, 2001, and the July 12, 2001 transcripts were fabricated as well. Id. He complains of false subpoenas. Id. He asserts that he advised appellate counsel of all of these erroneous and false documents, and appellate counsel failed to take the necessary actions to ensure that the record on appeal was genuine. Id. at 120.

This claim was raised in a state petition for writ of habeas corpus, dated August 30, 2005. Ex. W. On September 28, 2005, the First District Court of Appeal affirmed per curiam, stating: "[t]he petition alleging ineffective assistance of appellate counsel is denied on the merits." Ex. V. The decision of the First District Court of Appeal is entitled to AEDPA deference, regardless of whether or not an explanation is provided for the reasoning behind the court's decision. Wright, 278 F.3d at 1254-55.

Upon review of the direct appeal brief, appellate counsel raised four issues. Ex. J. A reply brief was also filed by counsel. Ex. L. The First District Court of appeal affirmed per curiam, noting that the issue presenting a due process challenge to the sexual predator act had been resolved in another case, and it was against Petitioner's position. Ex. M. The mandate issued October 1, 2004. Ex. O.

Respondents assert that Petitioner, in the state courts, failed to prove his assertions of fabrication and false documents

or submit any evidence to support his allegations of falsity and erroneous transcriptions. This Court has carefully and thoroughly reviewed the record. The November 16, 2001, transcript, filed June 3, 2002, runs from page 352-442, and the Court Reporter has certified, as of May 31, 2001, that it is a true and complete record of her stenographic notes.[17] Ex. B at 352-442. The Court notes that there is a volume break between Volumes II and III of the Record on Appeal, with the beginning of the November 16, 2001 proceeding included in Volume II, and the end of the proceeding contained in Volume III. The trial court had a full hearing on the motion to suppress, addressing the challenge to the subpoenas. Ex. B, Transcript of November 16, 2001 proceeding at 352. There is nothing to suggest that this transcription is incomplete or inaccurate.

The transcription of the August 28, 2001 pretrial proceeding was filed on March 17, 2003, and was certified as a true and complete record of the Court Reporter's stenographic notes on June 28, 2002. Ex. I at 9-18. The transcript of the July 12, 2001 proceeding was filed June 3, 2002, and was certified as a true and complete record of the Court Reporter's stenographic notes on May 29, 2002. Ex. B at 303-37. The August 3, 2001 proceeding was passed for pretrial on August 9, 2001. Ex. A at 5. Petitioner has

_____

[17] Petitioner's Exhibit 16, filed on March 25, 2011, contains merely an excerpt of the November 16, 2011 proceeding. See Exhibit 16 at 5 (Doc. #93). Of course, this excerpt does not constitute the complete transcription of the proceeding.

made, at best, conclusory and unsupported allegations against the Court Reporter.

Not only has he failed to support the performance prong of the two-part Strickland test, he has failed to show prejudice. To determine whether Petitioner was prejudiced by his attorney's failure to raise a particular issue on appeal, the Court "must decide whether the arguments the [Petitioner] alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)), cert. denied, 531 U.S. 1131 (2001). "If [a court] conclude[s] that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal." Eagle v. Linahan, 279 F.3d 926, 943 (11th Cir. 2001) (citing Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990)).

The matters about which Petitioner complains would have no effect on the result of the bench trial. Response at 57. As previously addressed, there was sufficient evidence presented at the bench trial to support the convictions. The trial court credited the child victim's testimony, and ultimately Petitioner's conviction is based on the evidence presented at trial. The trial court, after conducting a hearing, concluded that the letters from

Petitioner to his wife, obtained through the subpoena, should not be suppressed.

The adjudication of the First District Court of Appeal resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground eighteen because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts.

## XXV.  Ground Nineteen

Petitioner, in his nineteenth ground alleges his trial counsel was ineffective for waiving his speedy trial rights. Petition at 121. This issue was raised in ground eleven of Petitioner's amended Rule 3.850 motion. Ex. P at 37-38. The trial court denied this ground finding "the defendant has failed to provide any legal basis or factual support for his contention. Instead, this ground is merely a shotgun attack on the legal process to which the defendant was exposed." Id. at 104-05. Indeed, the court denied Petitioner's claim of ineffective assistance of counsel and determined that counsel's performance did not negatively affect the outcome of the trial. Id. at 109. This decision was affirmed on appeal. Ex. S.

This decision on Petitioner's claim of ineffective assistance of counsel is entitled to deference under AEDPA. Upon a thorough

review of the record and the applicable law, the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Petitioner is not entitled to relief on the basis of ground nineteen.

In the alternative, Petitioner is not entitled to relief on this ground. Speedy trial was waived by counsel. Ex. I at 16. An oral motion for continuance was made on July 12, 2001, after the amended information was filed July 6, 2001.[18] Ex. B at 333-34. Another motion for continuance was made on October 12, 2001. Ex. A, docket at 6. Plea negotiations were ongoing until August 28, 2001. Ex. I at 13. Counsel notified the Court that Petitioner was hoping to resolve the case for a disposition of time served, id. at 15, but the state only offered fifteen years followed by ten years probation. Id. at 13. See Response at 35. Petitioner rejected this offer. Ex. I at 13.

As noted by Respondents, the decision to not press for speedy trial while trial preparation is ongoing does not amount to deficient performance as it is a strategic decision, made by

---

[18] The original information charged Petitioner with one count of sexual battery. Ex. A at 7. The amended information charged three counts of sexual battery and one count of lewd or lascivious molestation. Id. at 56.

counsel, concerning readiness for trial. Ex. B at 333-34. Indeed,

> This waiver applies even in situations in which the attorney requests the continuance without consulting the defendant or against the defendant's wishes. See Taylor v. State, 557 So.2d 138, 142 (Fla. 1st DCA 1990), overruled on other grounds, ("Taylor's constitutional right to a speedy trial was not violated because the trial extension was reasonable and necessary to protect his right to competent, adequately prepared counsel."); State v. Kruger, 615 So.2d 757, 759 (Fla. 4th DCA 1993) ("'The principle is well established that the right to a speedy trial is waived when the defendant or his attorney requests a continuance. The acts of an attorney on behalf of a client will be binding on the client even though done without consulting him and even against the client's wishes.'" (quoting State v. Abrams, 350 So.2d 1104, 1105 (Fla. 4th DCA 1977))); see also State v. Kelley, 322 So.2d 581, 583 (Fla. 1st DCA 1975) (finding that an attorney may waive his client's right to a speedy trial).

Randall v. State, 938 So.2d 542, 544 (Fla. 1st DCA 2006) (per curiam). See Charleston v. McDonough, No. 4:07cv260-SPM/WCS, 2010 WL 780200, at *16 (N.D. Fla. Feb. 26, 2010) (recognizing that in Florida, counsel may waive speedy trial against his client's wishes and a defendant may not control the docket by making spurious demands for a speedy trial); Williams v. McNeil, No. 3:07-cv-594-J-33JRK, 2008 WL 2782675, at *6 (M.D. Fla. July 16, 2008) (not reported in F.Supp.2d) (finding counsel's performance was not deficient, acknowledging that a request for a continuance waives speedy trial, and this may be done against the defendant's wishes).

## XXVI.  Ground Twenty

In his final ground, ground twenty, Petitioner asserts that the cumulative effects of trial counsel's ineffectiveness and prosecutorial misconduct violated his right to due process of law. Petition at 125.  This claim was raised in ground eleven of the amended Rule 3.850 motion and the trial court denied this claim of denial of a fair trial, stating:

> In this ground, the defendant again accuses everyone of being responsible for his conviction because of a vast conspiracy involving the prosecutors, defense counsel, and the court reporter, not to mention the Jacksonville Sheriff's Office. As in each of his previous grounds, the defendant has failed to provide any legal basis or factual support for his contention.  Instead, this ground is merely a shotgun attack on the legal process to which the defendant was exposed.

Ex. P at 104-05.  The First District Court of Appeal affirmed this decision.  Ex. S.

Deference will be given pursuant to AEDPA.  The state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, Petitioner is not entitled to habeas relief on ground twenty.

In the alternative, the cumulative deficiencies of counsel claim is without merit.

> As set forth above, [Petitioner] has not
> demonstrated error by trial counsel; thus, by
> definition, [Petitioner] has not demonstrated
> that cumulative error of counsel deprived him
> of a fair trial. See Yohey v. Collins, 985
> F.2d 222, 229 (5th Cir. 1993) (explaining that
> because certain errors were not of
> constitutional dimension and others were
> meritless, petitioner "has presented nothing
> to cumulate").

Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir.), cert. denied,

531 U.S. 849 (2000). Petitioner is not entitled to relief on the

basis of this cumulative error claim alleging the ineffective

assistance of counsel. Furthermore, since there were no errors of

constitutional dimension, including with respect to any claims of

prosecutorial misconduct, the cumulative effect of any errors would

not subject Petitioner to a constitutional violation. See id.

In conclusion, Petitioner is not entitled to relief on the

basis of this cumulative error claim. He was not deprived of a

fair trial or denied due process of law. Ground twenty is due to

be denied.

## XXVII.  Certificate of Appealability

If Petitioner appeals the denial of the Petition, the

undersigned opines that a certificate of appealability is not

warranted. See Rule 11, Rules Governing Section 2254 Cases in the

United States District Courts. This Court should issue a

certificate of appealability only if the Petitioner makes "a

substantial showing of the denial of a constitutional right." 28

U.S.C. §2253(c)(2). To make this substantial showing, Petitioner

"must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    Petitioner's May 25, 2011, Notice of Receipt of Transcript and Request for Additional Time to Respond to its Completeness (Doc. #105) is **DENIED.**[19]

2.    Petitioner's May 27, 2011, Request for Reconsideration (Doc. #106) is **DENIED.** See Order (Doc. #100).

3.    The Petition (Doc. #1) is **DENIED,** and this action is **DISMISSED WITH PREJUDICE.**

4.    The **Clerk of the Court** shall enter judgment accordingly and close this case.

5.    If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.** Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

---

[19] The Court has reviewed the transcript and listened to and watched the DVD, and Detective Roberts Jones says that the interview of the child victim is taking place at about 11:55 p.m., on February 26, 2001. Ex. S-1 at 2 (filed *in camera)*. However, at trial, she attested that the interview of the child victim began on February 25th, at approximately 11:45 p.m.   Ex. C at 104. Detective Roberts Jones noted that the interview of Mr. Black followed, at 1:25 a.m., on February 26th.  Id. at 106.

**DONE AND ORDERED** at Jacksonville, Florida, this <u>  21st  </u> day
of  September, 2011.

HOWELL W. MELTON
United States District Judge


sa 9/21
c:
Timothy Black
Ass't A.G. (Hill)

HOWELL W. MELTON
United States District Judge